All right, sir. We're ready for you. Police, the court. I'm Henry Pinnock, and I'm here for Dynasty, the appellate, with me today is Ms. Fannie Grantham, who is the president of Dynasty. The overriding contention of the appellant in this case is that if the deed to Dynasty from the debtor, Heritage, is a valid deed to Dynasty, then none of the bankruptcy provisions, neither Section 544 nor Section 362, would apply because those bankruptcy provisions only apply to property that's in the debtor's estate. So how is the deed valid if the grantor has never signed it? The grantor, or the person who did sign, was in fact an officer of Heritage. So it was in fact signed by an officer. Looking at it on its face, it doesn't appear that the grantor signed it. There are a bunch of signatures on it. That's correct, but a close examination of it leads you to have to make an assumption about why Book of Grantham signed. What assumption when it says signed by Dynasty Group and then right underneath that is Grantham's signature? What is looking closely at show that undermine that obvious signature? Thank you, Judge. It did not say that it was signed by Dynasty Group by Grantham as an agent of Dynasty. I think it's the way it's being read. It says signed by Dynasty Group Inc., next line, Booker Walker, next line, I.T.S. Booker Grantham. What supposedly does I.T.S. stand for? Normally in a corporate deed, it would say if in fact it was signed by an agent of Dynasty, it would be signed by an agent of Dynasty and it would say it's so-and-so, it's president, it's treasurer. And what I'm saying to Your Honor is that that is not in this deed. The capacity in which Booker Grantham signed is not in this deed. And it was an assumption on behalf of the bankruptcy court and even the district court that Booker Grantham actually signed for Dynasty. But that is not true. That leads me to... But nowhere does it say it was signed by the debtor as the grantor. Well, I think that brings us... Ask the question, did the grantor sign this? Yes. And that brings me to the whole concept of Mississippi law because it's true that we would have to look... Before you get into that, let me ask you one question. This was supposedly transferred in April of 2008. That's over 11 years ago. Was there any evidence that any money has been paid in those 11 years for this valuable property? I don't think that the actual money was... Evidence of receipt of money was admitted into the bankruptcy court. However, a loan agreement wherein Dynasty had loaned money to Heritage in exchange for Heritage deeding the deed over to Dynasty was admitted into the court. But when was that loan going to be funded? Well, it had been funded prior to the transfer of the deed. As a matter of fact, Dynasty had asked... And there were checks or wire transfers showing that exchange of money? No, there was not an issue. Why wasn't... It seems easily available. You get the bank records. Well, it was not an issue at trial, but because the only issue was whether or not had Dynasty, in fact, loaned money to Heritage in exchange for Heritage deeding the deed over to Dynasty. The idea of consideration or the valid consideration paid by Dynasty was not an issue at trial. The issue here, of course, is whether or not... How much was it that was paid? You said money was paid before the transfer? Yes. How much? I don't know the exact amounts, but it was over $100,000. And I know before Judge Olak, the bankruptcy court, you know, it's even a question of, can you submit parole evidence? But did he... Was any parole evidence admitted for the judge to consider? Yes, it was admitted. The main item of control of parole evidence that was admitted without objection was the fact that before the objection was made, Booker Grantham did testify that I was the treasurer of Heritage at that time and that I signed in my capacity as treasurer of Heritage. And was he... Did the bankruptcy judge permit Mr. Grantham to be asked, well, if you were the treasurer in signing for Heritage, why is Dynasty above your name? No. The judge did not ask that particular question. I said, was it asked? Did anyone ask him that? Well, it did come up, and the response to all parties is that it was very confusing. The judge admitted that it was confusing, that it didn't make any sense. We admitted, at least the appellant admitted that it was confusing, and the appellee also admitted, the trustee admitted that it was confusing. As a matter of fact, the trustee said it was confusing, and the appellant admitted to explain why did he sign. Because when you read the entire signing, I think what the district court did, it stopped at the first two lines. It said signed by Dynasty, and then it had a signature, and then after that it said, Barry Walker, it's Booker Grantham. Ned Davis, it's Terry Foy. So when you look at all of the lines that's right underneath signed by Dynasty, it's more than just the signature of Grantham. There's a lot of other stuff that comes underneath. Well, there is some confusion there. Who's Terry Foy? Who's Ned Davis? I'll give you that, but regardless of that confusion, I don't see anywhere on the document where it says that the debtor, who was the grantor, signed the agreement. And so even accepting that Grantham said, oh, I thought I was, or whatever his testimony was, how does that overcome the plain face of the document? Because the plain face of the document does not say in what capacity Booker Grantham signed. Yeah, well, it certainly doesn't say he signed it for the debtor. It does not say in what capacity he signed. You're going to read in that he signed it for the debtor when, okay. Assuming that this is valid, why don't you address the but it was unrecorded as of the date of the bankruptcy. Correct. Okay. Under the strong arm provision, the trustee would be given the status of a bona fide purchase of a value, but he would have to be a bona fide purchase of value without notice. And the Mississippi statute codifies the requirement that it has to be without notice. And I think that was eight nine five three. But the idea is that the trustee was put on actual notice that somebody other than Heritage owned the property because on the very day of appointment of the trustee, the trustee testified that I received a copy of the petition, and the petition clearly says that Heritage does not own this property. So if you if you if the trustee picks up a document, those schedules are filed after the bankruptcy is commenced, right? Well, those schedules in this case was filed prior to the appointment of the trustee because it hadn't been converted. Yes, it started out for Chapter 11, and those petitions were already available in the court before the trust before it was converted to Chapter seven. And two or three months later, and maybe three months later, the trustee was appointed to be over the Chapter seven part of the case. And therefore, that disclosure that Heritage did not own this property was already a matter of record. Was the appointment of the trustee the key date or the filing of the bankruptcy for this provision? Well, there are cases that say it's from the start of the petition, but because we are dealing here with the strong-arm provision of the trustee, we have to deal with the date that the trustee was appointed about three or four months after the Chapter 11, which was filed in 2014, was filed. So we have to really look, for any practical purposes, look at the 2015 date at the time the trustee was appointed. And on the date that the trustee was appointed... What is your case law for that? Or our statutory case law? Either one. Well, either way, I don't think it would matter one way or the other. What is your authority for that? I mean, I don't have the case with me, but there are cases that say that. Well, name me one. Judge, I have to apologize. I've read so many cases that I can't name them. But, Judge, I would say this, that if you look at it very carefully, it will not matter whether you look back at the date that the Chapter 11 petition was filed or whether you look at the date that the Chapter 7 trustee was appointed. It's still the same. And that is, the start of the case, the inception of the case is the filing of the petition and its schedules. At the inception of the case, that disclosure, that Heritage does not own this 80 acres, is in that package from the inception of filing. So, either way, whether we look at the inception of filing of the Chapter 11 or we look three months later at the conversion when the trustee was appointed, that knowledge has already been disclosed and is already a matter of record in the bankruptcy court. So, and the reason why is because the case law says that if the trustee has actual knowledge, certainly under Mississippi law, he does not rise to the level of a bona fide purchase of value. Because that has to be a person without knowledge. The trustee has that knowledge. He has that knowledge from day one. And then, in addition to that, N. Ray Hamilton, which we recited in the brief, says that if he has actual knowledge, even if it's not direct actual knowledge, if there's enough notice to the trustee to put him on inquiry notice, then the inquiry notice can defeat his status as a bona fide purchaser for value. Now, here, I'm sorry, go ahead and I'll ask you later. Here we claim there was enough to put the trustee on inquiry notice. One, we said, was the petition that was filed, which was actual notice. Then there was also the fact that the debtor was in Chapter 7, it was no longer running the property, and there was still activity going on on the property, which means that would have been inquiry notice. Inquiry notice is anything that would put a buyer on notice to do a diligent and careful investigation of the facts concerning the title to that property. And certainly, one thing, another thing would be that if a hypothetical buyer was about to purchase property from Heritage, and Heritage admitted, even under penalty of perjury in its petitions, that it does not own that 80 acres, that, too, would put a hypothetical buyer on notice to do a diligent search to see, well, I'm about to buy this 80 acres from Heritage. Does Heritage actually own it? Well, Heritage says, no, we don't own it. Why did Heritage say it did own it in the Alabama bankruptcy? Ms. Linda Wilson, the president of Heritage, did testify that that was an error done by her attorneys in the Alabama case, which ultimately, as you know, was dismissed. It was dismissed. So she said, so she said in her testimony that by the time we got around to filing the Mississippi case, we corrected that because we did not own that 80 acres. I mean, this whole thing seems awfully fishy with the signatures and the fact that there's no evidence of any payment ever being made for these, what, 80 acres. And it just seems to me that's exactly what this strong-arm provision is about. It says if there's a supposed exchange of property that isn't recorded, we're not going to acknowledge that as actual, an actual transaction. Yeah, but I think you would have to look at the chronology of the transactions, and I don't think you would come to that same conclusion. In other words, the chronology is that the transaction giving the deed to Dynasty was six, seven years before the bankruptcy was ever commenced. That's what it says. And that's true. There was no money that exchanged hands. And that's true. But by the way, in the transcript, Your Honor, in the transcript, there is a note that was admitted into evidence that is of equal date, that is of equal date with the passing of the deed. And that's a very common situation so that when a person is buying a house, the deed sometimes even reflects the fact that the consideration for buying this house is the note itself, is the note. Yet it wasn't recorded. But be that as it may, but as between these two parties, but as between these two parties. But I'm saying it wasn't recorded. We have these suspicious signatures. We have no money being exchanged. In the Alabama bankruptcy just a few years ago, they said it was still Heritage's property. It's off. Well, Judge, we would disagree that the signature is suspicious. And if it is suspicious, Judge, then parole and parole. If it is suspicious, then parole evidence ought to be admitted to determine whether or not that was indeed a signature by Booker Grantham on behalf of Heritage six years before any bankruptcy proceeding ever commenced. I have a question for you. The petition filed in Alabama, was that 11 or 7? It started out the same way. It started out as an 11. And it stated the property was owned by Heritage. Correct. Then the chapter 11 is filed in Mississippi. Tell me on what schedule and how it is stated that the property does not belong to Heritage. I don't have the exact schedule letter in front of me, but the schedules are, it's like schedules B, C, D, and I think this might be on schedule B. So. Just that it's omitted or does it actually say we sold this back in 2008? No, it's on the schedule. It says that it doesn't even appear that they. It's just omitted. That's my point. There's no affirmative declaration. We do not own the 80 acres in Kemper County. It's just absent there. It's absent. And also in the bankruptcy court, there was testimony from the president of Heritage. That's quite a difference between it's not even on the schedule as opposed to you're implying that it was affirmatively stated we do not own the property. Well, in the trial, that was affirmatively stated that they do not own the property. But however, Judge, may I add that in the schedules, you don't get a chance to make that kind of schedule. You only get a chance to list the assets that you do own. Exactly. But your argument today, I think a person hearing it would have a fair understanding you were saying there was an affirmative declaration in those schedules. That's what's had me confused. I didn't mean to convey that strongly. And sometimes I do overstate very strongly. But my only point is saying that Heritage in its schedules does not claim ownership of 80 acres in Kemper County, the subject property that we hear about. All right. Thank you, Mr. Finick. You've observed your rebuttal time. Mr. Spencer. Thank you, Your Honor. May it please the court, Jim Spencer for Stephen Smith, who is the trustee in bankruptcy for Heritage Real Estate Investment, Inc. I think it's important that we've got three, maybe four, grounds that this case can be affirmed on. The court questioned Mr. Finick on two of them. One, the obvious one, is this deed, this quitclaim deed, is signed by dynasty under Mississippi law, Mississippi Code, section 89.3.1, or 89.1.1, any transaction where you're trying to sell real estate, it has to be done by a conveyance that's signed and delivered by the person who owns the property. And here, the person that owned the property was dynasty. Heritage did not sign the deed. The person that owned the property was Heritage. Heritage didn't sign the deed. That is clear. It is clear because the deed says, signed by dynasty. It was not reported. So, as of the date the bankruptcy was filed, there was no notice to anybody that this property interest was out there. It was simply a secret interest. You'll ask counsel opposite about the section 544.A.3 says, the trustee shall have, without regard to any knowledge of the trustee or any creditor, the rights and powers of a bona fide purchaser of real property that obtains the status at the time of the commencement of the case. That's when the case is filed. The chapter, the fact that it was filed as a chapter 11 originally, instead of a chapter 7, is really of no substance to a strong arm claim because a chapter 11 debtor in possession under the bankruptcy code has the same standing and the same rights that a chapter 7 trustee would vis-a-vis those avoidance actions. They have the right and they have the obligation as a matter of law to pursue those claims. So, it is as of the date of the commencement of the case is the critical issue. The second issue that I wanted to mention to the court, if I could, that the lower courts did not address but is a ground because it's in the record that this case can be affirmed on, is this was a plain post-petition transaction. And we plead that in our complaint. We asked the court to set this aside as a post-petition transaction under section 549 of the bankruptcy code. Now, the lower courts did not address that issue because they didn't feel like they had to, I guess. They just didn't address it. But it is clearly a post-petition transaction. It's undisputed in the record that the deed was not filed until after the case was filed, more than six months after this bankruptcy was filed. Number two, this is a state property because as of the date the bankruptcy was filed, it was in the name of heritage. Number three, the court didn't approve it. There was no court authorization for approving this transaction, which section 549 requires. And thirdly, or fourthly, there was no exception that applied. There is an exception under 549C to a bona fide purchaser of real estate who doesn't know about the bankruptcy. But here on page 174 of the record, the representative of Dynasty said, yeah, I knew about the bankruptcy and I went over there and filed the deed anyway. She was in Mississippi and filed the deed. You said it was property of heritage of the estate at the time of the filing. I mean, doesn't that all depend on this quitclaim deed issue? Because let's say it was perfectly signed by heritage. There were none of these issues. It just wasn't recorded. But it was signed back in 08. I mean, then it's no longer heritage's property. I mean, I thought the recording is all about third-party notice, not between the parties to the transaction. It is between parties to the transaction. But the trustee under section 544A3 takes it free and clear of those unreported secret transactions. I understand that. I thought when you were getting to 549, you said it wasn't property. Whether it's property of the estate, to me, seems to turn on this quitclaim deed. I don't disagree with that. But it is also, I think, property of the estate if it's subject to an avoidance action under 541. I'm guessing at my statute number, Judge, I think, Your Honor, I think it's 541C. But I'm not positive. There's a bankruptcy code provision that says property that's subject to avoidance is property of the estate. And so we would say, yes, it is property of the estate. And so it was a post-petition transaction. And I think I guess you've got three grounds the district court relied on. You only need one of those really to hold up. Seriously, that's better than arguing for. I understand we can affirm on alternative grounds. I just wanted to mention that because I wanted to mention it in the context of one of the other grounds that we've got is the automatic stay. And this violated the automatic stay by filing it. And I don't want there to be any confusion. There's been some confusion about a particular provision of Section 362 that relates to whether it's 362, there's an exception under Section 362B24 for conveyances that aren't set aside as a post-petition transfer under 549 or as a transfer under 544. And if that section, which is very confusing, doesn't apply or does apply, then there's a question about whether the stay applies. But here, because it is set aside, you can set this conveyance aside under 544A3 or 549, that exception doesn't apply. So the stay applied. And since the automatic stay applied, the bankruptcy court properly avoided this because in the Fifth Circuit, as we all know, a conveyance or a transaction or something takes place post-bankruptcy, violates the stay, is voidable, not void. They could have gone back and perhaps asked the court to set aside the stay or annul the stay, but that never happened. And so where we are is that is also a ground, Your Honor. So my position is we have four grounds, three of which were addressed, all of which there's ample evidence in the record to support. Does it matter to you whether or not we go down the trail of whether the deed is valid or not? You prefer just us relying on the strong loan provision or getting into the parole evidence and all the rest of that? Your Honor, I think the easiest way to affirm this case is under Mississippi law that that deed is invalid because it is not signed by the grantor. That is clear. The statute, Mississippi Code Ante 89-1-1 plainly states that to convey the interest has to be signed and delivered by the person that owns the property, and this was not. I think that is the address first. All the other stuff goes away with that. Are there any practical implications, though, from using, say, the strong arm? I mean, or is it all the same practical? Practically, it's the same, Your Honor. Practically, it's the same. It reads the same result either way. And again, I think that that is the easiest way is that the deed is invalid. And unless the court has any more questions for me, I will tender my time. I would say one thing I don't think there is any record evidence about there being a payment for this deed. I don't remember it being, and I looked, I don't think there's any record of an actual transfer of money. There is some discussion about a promissory note, but that is also very confusing in the record as to what that note actually meant because this property is not mentioned on that promissory note as a piece of property that was given to secure that note. I think that is in the record. That's my concern a bit is the evidence seems so confused, and I wasn't clear from the opinions by the bankruptcy judge or the district judge about what evidence was admitted, what the courts looked to in deciding that this deed was not, that parole evidence wouldn't be allowed, et cetera, et cetera, because it looked like a great deal of evidence was let in. I suppose you have to consider it in order to say whether or not there's a question of ambiguity, et cetera, et cetera. That's, I'm a bit surprised that you say the easiest route is to find the deed not before an objection could be made, the question was answered, and then an objection was all going on at the same time. It doesn't appear in the transcript, and then the objection to that testimony appears, but even if the court considered that, I think it could, it's a bench trial, and the court rejected it and said there's no evidence based on the four corners of the document that Mr. Grantham was signing. What they're asking, and what the court said below was that you can't take signed by Dynasty Group, Inc., and replace that with signed by Heritage, Inc., even if you consider that testimony because the parole evidence rule sets that aside, but, Your Honor, Section 544 is just as clear as another ground to set this aside because clearly we talked about all the bona fide purchaser for value stuff. There was nothing of the record in the land records. If you went out to the land records of Kemper County and you searched, you're going to see Heritage owned the property. There's nothing that imports any constructive notice like a wild deed out there like this would be. If this were filed, then maybe, yeah, you would have some deed of further inquiry because you saw this deed out there, but there was absolutely nothing of the record that you could go look at if you were doing a title search that would show that there was anything other than Heritage that owned the property, any entity other than Heritage that owned the property. What is in the record as to why cattle were grazing would put a purchaser on notice or put the trustee on notice? That's one of the reasons given, cattle were grazing on the property, but what does that show to a... It doesn't show anything. It just shows that whoever... No evidence was put on other than cattle were grazing? As to what an inquiry would have... No, sir. No, sir. There was none. All right. Thank you, Mr. Spencer. Back to you, Mr. Fennick, if you have any rebuttal. You've got five. Thank you. First, I'd like to address Judge Barksdale's last concern. The purpose of the diligent and careful investigation of a prospective buyer would be to go and look at the property, and you looked at it and you saw cattle grazing where you know that Heritage has ceased operation. Then you have to ask yourself, well, who is conducting the raising of the cattle out there on the property? And that's because it had been turned over to Dynasty, and Dynasty was doing that part of it. So you want to look again post-bankruptcy filing, so a lot of it turns on this, the relevant date to look at notice. Yes. I was answering his question, but yes, the relevant date. I would assert, and the court should bear this in mind, as we just discussed, that this transfer occurred six years before the bankruptcy even came about. There was no idea that this bankruptcy was going to be happening. The other thing, though, is that when considering whether or not the deed is valid, that is a consideration between the grantor and the grantee. That's not an issue between a third party at that point. I'm saying your point about the cattle were providing notice, you're saying that gives notice because if you'd gone after it's been converted to Chapter 7, you might wonder, well, wait, I thought Heritage is done doing anything. Why is there still an operating ranch? But I'm saying that again comes back to when you look at notice. Yes. And he says, the statute says, at the time of the commencement of the case. Yes. Those cattle at the time, if you went out there the day of the bankruptcy, you wouldn't think anything's unusual about a bunch of cattle being out there. Well, perhaps. Perhaps. But my only issue is that that is a 544 consideration, and I was going back to the whole idea that the validity of the deed is an issue between the grantor and the grantee. And between the grantor and the grantee, there is nothing in here that says that Heritage tried to assert any other control over the property at that point. As a matter of fact, the testimony at trial was that, from the Heritage president, was that we don't own it, that's Dynasty's property. Right. Aren't some of these officers the same companies? No, they're not. They're not the same. I thought that's what the confusion goes to with Grantham, because he could have signed either for Dynasty or Heritage. No, he's not. He wasn't a Dynasty employee. He clearly says, I am not an officer of Dynasty and never have been an officer of Dynasty. And that's in the record. I thought there were connections to... Anyway, go ahead. One is a Mississippi corporation, one is an Alabama corporation. They have different boards. All of that's in the record. I know, but I thought some of the same individuals were associated with both entities. Well, no, that's not true, because Grantham says, I'm not associated with Dynasty. Linda Wilson, who's with Heritage, said, I'm not associated with Dynasty. And the Dynasty person testified... Even Linda Wilson signed saying, I'm on behalf of Dynasty. No, no, that was a faulty acknowledgment. No, yes, see, because... Linda Wilson signed as a witness. Is that right? She signed as a witness. But she was the president of Heritage, right? She was the president. She was the president of Heritage. So she's physically present when all this happens, but she does not sign in the capacity as president of Heritage, the grantor. That's because in 2008, she was the secretary, and that's in the record. You're saying she had nothing to do with Dynasty? She says at the bottom, Linda Wilson and Ann Dawson of Dynasty Group, an Alabama corporation. Well, see, as we've already come to agree, that that acknowledgement is faulty because this entire deed is done by somebody who is not a lawyer, and that it is... That's probably why it's not valid. Well, no, as a matter of fact, Mississippi law says the opposite. And I want to call you... It has to be signed by the grantor. I know, but I want to call your attention to White v. White, and it's a 2017 Mississippi case, and it says that a deed is enforceable to effectuate the manifest intention of the parties, although inartfully and untechnically drawn. And in this case... Signed. Does it say it doesn't have to be signed by the seller? Well, the question is, it is signed. The deed is signed. The question is, and I can appreciate your... If I can go sign a deed that says I'm giving away my neighbor's ranch, I have nothing to do with it. I just sign it, and that's... The reason why you have to look at the intention of the parties is because it would be a nullity for dynasty to deed heritage property to dynasty and then let dynasty sign the deed. That is a nullity. And that's why Mississippi law says you have to look at all of the facts and circumstances supporting and surrounding the transaction. The only reason why dynasty, why heritage, would be doing a deed in the first place is to give it to dynasty. Dynasty has no incentive to do a deed, deeding property to itself and signing the deed itself, which is a nullity. So that's an exercise in futility if you try to read it that way. I want to call your attention to three things, and that is... I'll give you one sentence. You got a red light. Okay. One sentence, but three observations. The bankruptcy judge said it's confusing. The trustee said it is a confusing mess. We admit it's confusing. The district court is the odd man out. He's the only one that says that it's not confusing, it's not ambiguous, and that it clearly shows that Grantham was signing on behalf of dynasty, and that's clearly untrue. Thank you. Thank you, Mr. Bennett and Mr. Spencer. I appreciate the briefing and argument. The case will be submitted.